```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
HUNTER CARLIN,

                Plaintiff,                  MEMORANDUM AND ORDER

           - against -                      23 Civ. 5376 (NRB)

CITY OF NEW YORK,

                Defendant.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In this action, plaintiff Hunter Carlin ("Carlin") sues defendant City of New York (the "City") in connection with his arrest for allegedly operating a motor vehicle while in an intoxicated condition in the early hours of the morning on October 12, 2014. Compl. ¶ 24.[1] Following his arrest, Carlin was taken to the 28th Precinct, then transferred to Mount Sinai Hospital for the treatment of injuries allegedly sustained during his arrest. Id. ¶¶ 24-25. Carlin was subsequently transferred to Bellevue Hospital, where he received psychiatric care. Id. ¶¶ 25-26; ECF No. 42 at 2-3.

Carlin was arraigned in the hospital approximately ten days after his arrest, on October 22, 2014 at 10:29 A.M, at which time his bail was also set. ECF No. 38 at 3; ECF No. 40 at 12. His bail appears to have been paid one day later, on October 23, 2014.

---

[1] All charges against Carlin in connection with this arrest were later dropped, and he pled guilty to one charge of disorderly conduct. Compl. ¶ 27.

1

ECF No. 40 at 12. Sometime after his bail was paid, Carlin was transferred from the prison ward to the general psychiatric ward at Bellevue Hospital. Carlin asserts that he was not released from the general psychiatric ward until October 30, 2014. ECF No. 42 at 1.[2]

Carlin now brings claims against the City under 42 U.S.C. § 1983 and for false imprisonment, alleging that he remained in the custody of the Department of Corrections for an unreasonable amount of time after his bail was paid. Id. ¶¶ 31-43.[3] Although Carlin has also raised concerns regarding whether he was held improperly at Bellevue Hospital under N.Y. Mental Hygiene Law §§ 9.27 and 9.39, see, e.g., ECF No. 42 at 1-2, those claims are now time-barred.[4] Accordingly, the only live issue in this action is whether

---

[2] The documentary record in this action is incomplete. However, this is a direct consequence of Carlin's refusal to sign a HIPAA release allowing for the full release of his records. Carlin's counsel has stated that Carlin "refused to sign a HIPAA form that would have allowed [Carlin's counsel] to obtain his records from Bellevue Hospital" and "refused to sign a HIPAA-compliant for[m] that would allow defendant's counsel to access his records." ECF No. 30-1 at 4. During the July Conference, Carlin confirmed that he was willing to sign only a "limited disclosure" of his medical records. Similarly, in his most recent letter to the Court, Carlin objected to the City's request for "nearly 400 pages of [his] Bellevue psychiatric records from this period[,]" characterizing the City's request as "an invasion of [his] psychiatric privacy." Ex. 42 at 3.

[3] On or about May 20, 2023, Carlin opted out of a class settlement in Jones v. City of New York, 17 Civ. 7577, pursuant to which the City agreed to pay $3,500 to each individual who was released on bail from DOC custody between October 4, 2014 and October 21, 2022, and whose release was delayed for more than three hours after his or her bail was paid. See Jones, 17 Civ. 7577 (JGK) (BCM), ECF No. 208 (Order Granting Plaintiffs' Motion for Final Approval of Class Settlement, dated July 11, 2023).

[4] N.Y. Mental Hygiene Law § 9.27 allows for the director of a hospital to "retain . . . any person alleged to be mentally ill and in need of involuntary care and treatment upon the certificates of two examining physicians[.]"

2

Carlin is entitled to damages for any unreasonable delay between the time his bail was posted and his transfer out of the prison ward at Bellevue Hospital.  Compl. ¶¶ 31-36.

During a conference with the parties on July 29, 2025 (the "July Conference"), the parties agreed to a settlement on the record and in open court.  See ECF No. 43, July Conference Transcript ("Tr.") at 2:17-7:23.[5]  However, on August 11, 2025, Carlin filed a letter with this Court stating his "serious procedural and substantive concerns" regarding the July Conference and requesting "that no settlement be enforced until these concerns are addressed."  ECF No. 42 at 1, 3.

It is well settled that, under New York law, an oral settlement agreement is binding on both parties if it is made on the record and in "open court."  See Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri, 953 F. Supp. 557, 560-61 (S.D.N.Y. 1997) (quoting N.Y. C.P.L.R. § 2104);

---

Similarly, N.Y. Mental Hygiene Law § 9.39 allows for the director of a hospital to "retain . . . for a period of fifteen days any person alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to themself or others."

[5]    The Court held its first conference with the parties on February 4, 2025. Shortly after this conference, on February 13, 2025, the Court received a joint letter from the parties stating that they had reached a settlement.  ECF No. 21.  However, the Court subsequently received a letter from plaintiff's counsel stating that, although the parties had "verbally reached" an agreement following the February 4 settlement conference, Carlin had "declined to sign the settlement papers[.]"  ECF No. 22 at 1.  Approximately three weeks later, Carlin submitted his own letter stating that he was requesting "time to resolve several open issues[.]"  ECF No. 37.  The second conference, on May 13, 2025, also ended without any settlement having been reached.

see also Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007) (a "voluntary, clear, explicit, and unqualified" settlement on the record in open court is binding); Medinol Ltd.v. Guidant Corp., 500 F. Supp. 2d 345, 353 (S.D.N.Y. 2007) ("A settlement stated on the record is one of the strongest and most binding agreements in the field of law and is thus entitled to substantial deference.") (internal citation and quotation marks omitted).[6]

"Afterthought or change of mind are not sufficient to justify rejecting a settlement." Willgerodt, 953 F. Supp. at 560 (citations omitted). Rather, "a court may relieve a party of the consequences of a settlement agreement '[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident . . . '" Id. (quoting Rivera, 115 A.D.2d at 432, 496 (1st Dep't 1985)). None of these circumstances is present here. Accordingly, we may not set aside the parties' settlement. Id. at 561; see also Foster v. City of N.Y., No. 96 Civ. 9271 (PKL), 2000 WL 145927, at *4 ("This court must enforce a binding oral agreement, notwithstanding that plaintiff may have had a change of heart."). Nonetheless, we make the following statements to ensure the record in this action is complete.

---

[6] In fact, plaintiff notes in his letter that "[t]he Second Circuit advises that 'the better practice is to memorialize settlements in a signed writing or on the record in open court' to avoid later disputes.'" ECF No. 42 at 1 (quoting Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 323 (2d Cir. 1997) (emphasis added)).

4

The July Conference proceeded without any interruptions or irregularities. Carlin's father was present during the conference, and he sat with his son at counsel's table throughout the proceeding. Before settlement discussions occurred involving all the parties, Carlin and his father separately went into the hallway and returned, informing the assembled masses that Carlin was interested in discussing settlement. At that point, the Court made its jury room available and left the bench, returning only after being informed that the parties had reached a settlement agreement. At that point, the Court called for a court reporter and placed the settlement on the record. A transcript of that proceeding is annexed as Exhibit A. See also ECF No. 43. While the regularity of these settlement discussions and the parties' arrival at their settlement is well established, we will nonetheless respond to two of the points raised by Carlin in his letter.

First, Carlin suggests that the existence of his counsel's motion to withdraw somehow taints the legitimacy of the parties' settlement.[7] However, several facts establish that this concern is unfounded. First and foremost, Carlin was represented by his counsel in February 2025, when the City first made its $30,000

---

[7] On June 10, 2025, Carlin's counsel filed a motion for leave to withdraw, in which he asserted a charging lien of $10,000 based on the parties' settlement in principle, which totaled $30,000. ECF No. 30-1 at 5. Carlin submitted a declaration opposing his counsel's request to withdraw later the same day. ECF No. 40.

5

settlement offer.  Second, it must be recalled that the application at issue is a motion to withdraw, and not an application by Carlin to dismiss his lawyer.  ECF No. 30.  Indeed, Carlin objected to his counsel's motion.  ECF No. 40.  And third, based on the Court's familiarity with the case after conducting three conferences and receiving several submissions from the parties, there exists no basis, to our knowledge, to bar Carlin's lawyer from receiving his contingent fee pursuant to his retainer agreement.  For all these reasons, the conflict between Carlin and his counsel had no actual impact on the parties' settlement.

Additionally, Carlin has absolutely no standing to dictate which Corporation Counsel the City of New York sends to a conference.  Accordingly, he may not object to the City's choice of counsel to appear at the July Conference.

In sum, given the regularity of the settlement proceeding and the fact that Carlin has not provided the Court with any reason to set aside the parties' recorded settlement, the Court must enforce the parties' binding settlement agreement.  See Willgerodt, 953 F. Supp. at 560; Foster, 2000 WL 145927, at *4.

Dated:   New York, New York
         September 5, 2025

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

6

# EXHIBIT A

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HUNTER CARLIN,

              Plaintiff,

         v.                            23 Civ. 5376 (NRB)

CITY OF NEW YORK,

              Defendant.               Settlement
------------------------------x
                                       New York, N.Y.
                                       July 29, 2025
                                       3:30 p.m.
Before:

              HON. NAOMI REICE BUCHWALD,

                                       District Judge


                         APPEARANCES

McCALLION & ASSOCIATE LLP
     Attorneys for Plaintiff
BY:  KENNETH F. McCALLION

NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendant
BY:  JASON W. IMBIANO
```

1               THE COURT:  This is *Carlin v. the city of New York*.

2          For the plaintiff?

3               MR. McCALLION:  Kenneth McCallion, McCallion &

4    Associates.  Good afternoon, your Honor.  For the plaintiff.

5               MR. IMBIANO:  Good afternoon, your Honor.  Jason

6    Imbiano, from the City of New York, for defendants.

7               THE COURT:  I should note the other important people

8    in the courtroom which is first Mr. Carlin, Hunter Carlin.

9               MR. H. CARLIN:  Yes, your Honor.

10              THE COURT:  And the other Mr. Carlin, whose first name

11   I don't remember.

12              MR. G. CARLIN:  Glenn.

13              THE COURT:  To be officially for this purpose and all

14   other purposes, Mr. Hunter Carlin's father.

15          I guess we have been here since about 2:30 or earlier.

16              MR. IMBIANO:  I believe 2:00.

17              THE COURT:  Okay.  2:00.  So we have been here about

18   an hour and a half, and the parties have reached a settlement

19   of this matter.  I would like to put the terms of the

20   settlement on the record and then ask the parties each to

21   confirm that my description is correct.

22          First, the amount of the settlement is $30,000.

23          It is also understood that one-third of that is

24   counsel's fee.

25          In exchange for the payment of $30,000 by the city,

1  the plaintiff will agree to voluntarily dismiss the complaint.
2             There will be the standard release that the city of
3  New York uses.
4             The release will extend to all civil rights claims
5  and, as is standard form, from the beginning of time to the
6  present.
7             There will be no admission of liability.
8             And the plaintiff's counsel will furnish the W-9 tax
9  form to the city.
10            The parties will, of course, sign the documents after
11 they are prepared.
12            Are there any terms that I have left out?
13            MR. McCALLION:  Your Honor, if we could add that
14 payment would be made to the escrow account of McCallion &
15 Associates, and we would then issue a $20,000 bank check to
16 Mr. Carlin.
17            THE COURT:  That's a fair addition.
18            MR. H. CARLIN:  Can we put a timeline on that?  Is
19 that proper.
20            THE COURT:  Okay.  The timeline will come from the
21 city to begin with.  We have to get the documents signed.
22 Until the documents are signed, the comptroller is not going to
23 authorize the issuance of the check.  So in many ways the
24 control is at the front table in terms of signatures on the
25 document.  The settlement document, of course, the counsel for

1    the city has to get it prepared.  Since it's pretty standard I
2    assume you can get it within two days let's say.
3             MR. IMBIANO:  Yes, your Honor.
4             THE COURT:  And have it delivered to Mr. McCallion?
5             MR. IMBIANO:  Yes, your Honor.
6             THE COURT:  Okay.  Then I think Mr. McCallion will
7    probably ask you, Mr. Carlin, to come to his office to sign the
8    document in the traditional way of ink.
9             Fair?  Correct?
10            MR. McCALLION:  Yes.  No DocuSign or anything like
11   that.
12            MR. H. CARLIN:  And the time between when you receive
13   it and when I receive it?  That was my question.
14            MR. McCALLION:  As soon as we receive the document,
15   which will probably be identical to the one we already have
16   since we received a package from the city, I would confirm that
17   the one I have is the same as the --
18            THE COURT:  Why don't you just take the new one.
19            MR. McCALLION:  I will take the new one.
20            THE COURT:  Let's not get involved in comparing an old
21   one to a new one.
22            MR. McCALLION:  Yes.
23            THE COURT:  Just take the new one, and the day that
24   you receive it, you contact Mr. Carlin and make sure that you
25   arrange a time for him to stop at your office and sign it.  You

1    are not the only person there; you have other attorneys and
2    folks that can take his signature, correct?
3             MR. McCALLION:  Yes.  Mr. Carlin is familiar with our
4    full-time person at 100 Park Avenue.
5             THE COURT:  Okay.  So it can be left for him to be
6    signed?
7             MR. McCALLION:  Yes.
8             The second answer to Mr. Carlin is that once we
9    receive a check from the city and it's put into escrow, once it
10   clears, then the bank J.P. Morgan Chase can issue the same day
11   a check for $20,000 to him, and we would then contact him and
12   ask him if he wants to pick it up or whether we would overnight
13   it to him.
14            MR. H. CARLIN:  Thank you.
15            THE COURT:  Okay.  So, Mr. Imbiano, what will be the
16   anticipated delay after the document?  If in two days you get
17   the settlement agreement to plaintiff's counsel, how soon can
18   the comptroller cut the check?
19            MR. IMBIANO:  My understanding is it's a matter of
20   weeks, not necessarily months, and that the --
21            THE COURT:  I should hope so.
22            MR. IMBIANO:  And that the comptroller issues a
23   number, maybe called a claim number, where they have a portal
24   where you can check the status, where it is in the pipeline,
25   but I can certainly --

| | |
|---|---|
| 1 | THE COURT:  Can we say that within 30 days should be |
| 2 | ample? |
| 3 | MR. IMBIANO:  I will certainly communicate that to the |
| 4 | comptroller. |
| 5 | THE COURT:  Good.  Have we left anything out? |
| 6 | Hopefully not. |
| 7 | MR. McCALLION:  I will be providing my law firm's W-9. |
| 8 | However, sometimes the comptroller might have some additional |
| 9 | requests.  I think parties, certainly the plaintiff and his |
| 10 | counsel and I am sure the city will agree with any additional |
| 11 | requirements that the comptroller may have for the release of |
| 12 | the funds. |
| 13 | THE COURT:  I am assuming that that's more technical |
| 14 | than substantive. |
| 15 | MR. McCALLION:  Yes. |
| 16 | MR. IMBIANO:  Just for clarification, it is a |
| 17 | substitute W-9.  The W-9 is IRS.  The substitute W-9 I believe |
| 18 | is issued by the city itself.  It is the same idea, though, for |
| 19 | tax purposes. |
| 20 | THE COURT:  Okay. |
| 21 | MR. IMBIANO:  For the city's tax purposes. |
| 22 | THE COURT:  Mr. Carlin, you look concerned.  Counsel |
| 23 | has to report his share as income.  You, on the other hand, it |
| 24 | is not income, so there's no tax. |
| 25 | MR. H. CARLIN:  Thank you. |

```
 1              THE COURT:  So that's what they are talking about.  In
 2     a sense it has very little to do with you.
 3              MR. H. CARLIN:  Thank you.
 4              THE COURT:  All right.
 5              Good.  I think we did this.
 6              MR. IMBIANO:  I don't know if I consented or if I
 7     confirmed the terms.
 8              THE COURT:  You know what, you are absolutely right.
 9     I forgot to go around the room.
10              Mr. McCallion, do you agree that the terms of the
11     settlement have now been put on the record and that you consent
12     to the settlement?
13              MR. McCALLION:  Yes, your Honor.
14              THE COURT:  The same question, Mr. Carlin:  Do you
15     agree that the Court has accurately placed the terms of the
16     settlement on the record, and do you consent to the settlement?
17              MR. H. CARLIN:  Yes, your Honor.
18              THE COURT:  The same question to Mr. Imbiano.
19              MR. IMBIANO:  Yes, your Honor.
20              THE COURT:  I think that's it.
21              Okay.  Thank you, guys.
22              MR. H. CARLIN:  Thank you, Judge.
23              MR. IMBIANO:  Thank you.
24              (Adjourned)
25
```